Fence v. Perimeter Technology, 2007, 13-18, and 13-19. Before we begin, the panel had some concerns over the elimination of the so-called cross-appeal. And we believe, Senator, no doubt to advise on that issue. It would seem to us that the cross-appeal is simply raising another ground for affirmance of the judgment, which is not a proper cross-appeal, which means that you had extra leafing pages and you would hope to have a second argument. It's obvious that it isn't a proper cross-appeal. Is there any particular comment you wish to make on that? May I present? Yes. Somebody on that issue. Yeah, absolutely, Your Honor. My name is Greg Aaron. I'll be happy to help any Perimeter Technologies. And the two issues that we raised in the cross-appeals is plant construction. You won the case, right? Right. And if you're right on your so-called cross-appeal, asserting that McCoy made errors in plant construction, he still would. So why aren't you just raising further arguments to support the judgment? Technically, they are further arguments supporting the judgment. The problem is with technicalities, with precision. You're entitled to make the argument, but only as part of your principle argument, but not to make a second argument. Do you have any distinction of the cases that we signed to? You did get the letter. I got the letter. I read all the cases. I noticed that at least two of your honors have been on some of the prior panels, especially the Phillips case, Judge Murray. Well, we were all on the Phillips panel. Well, sure. The en banc. Yes, the en banc hearing. And the only distinction, and it's not clear from at least some of the discussion in these cases, is that the issues that we raised as the purported cross-appeal were not part of the summary judgment that we prevailed. They were part of the Barberman hearing, and the ruling underlayed the summary judgment that prevailed. That's absolutely true in almost all of these cases. I can't think of them individually. Well, I would indulge you to offer the alternative argument in support and withdraw it as a cross-appeal. I withdraw it. We're not. Thank you. My name is Larry Barber, and I'm the attorney for the appellant at Visible Fence. I guess now I can save my time arguing that the cross-appeal was inappropriate, so we'll move on to the merits of the case. This is an appeal from the judgment of the United States District Court for the Northern District of Indiana Fort Wayne Division from the entry of two separate distinct motions for summary judgment filed by the defendant, Perimeter Technologies. And this appeal, in fact, addresses two distinct claims. There's a claim for trade dress infringement. First of all, with respect to the counterclaim, this is an equivalence case, isn't it? It is, Your Honor, to the extent the court determines that our claims construction arguments are not well taken. The motion for summary judgment in this case... Well, the claims construction arguments, in effect, say that we've been biased in the opposite direction and that what is inside can be outside and what is outside can be inside. It seems to me you're arguing three opposites. No, Your Honor. We believe that the language of the claims, the elements of the claims at issue in this case, support the definitions as we propounded them to the district court and that if one accepts those definitions as we presented them to the district court, then this is a case of... It's not a case of equivalence. In fact, there was no argument made in connection with the motion for summary judgment that assuming that those claims were not properly constructed by the district court, that summary judgment would be appropriate in this case. The summary judgment was all based on the construction of the claims as given by the district court. Under those circumstances, admittedly, we were left with the argument, the legal argument that the doctrine of equivalence governs this case. However, if the court concludes that we are correct and the three terms which we argue in our brief are interpreted the way we believe they should, I don't believe this is necessarily an equivalence case. The first of those three claims at issue in this case are first the claim located inside. It's part of Claim 9, the 900 patent at issue in this case. It starts a contactor having a spring located inside the battery holder. We believe that the language of Claim 9 is broad enough to cover a spring being either partially or completely inside the battery holder. There's nothing in the claim language itself which takes the position, which supports the position asserted by a perimeter and taken by the district court in this case that says that the claim, that the located inside means completely inside. Just as perimeter says, well, we want to insert the term partially inside. It doesn't say partially inside and partially outside either. No, it doesn't, nor does it say completely inside. It's the same language, ordinary meaning. Inside is inside. Well, we believe that inside could support both those terms and given both of those definitions. Is it your position that the word inside means having some portion on the inner side? Yes. So if I'm standing outside my car and reach my hand in through the window and I'm inside the car, it doesn't seem like a common prevalence. Well, I would put it this way. I would say if you were sitting inside your car and placed your... that all it takes is you're still inside even if you put a finger outside the car. But my question is what's your position? Is your position that all you have to do is have a finger on the inside and then you're inside the car? Yes. I think you're telling me yes. Yes, it is. That's not what one normally thinks of as the meaning of the term inside. But to use my example, that if I'm sitting inside my car and I place my leg outside the car as I start to get out, I think one would normally think I was still at that point inside the car. So I guess it's a matter of degree. And in this case, we believe that there's certainly nothing in either the language of the claim or nothing in the specifications that... between the base of the battery holder and the battery. How can it not be fully inside if that's the case? How can it be located in that exact location and still protrude with the finger out the window? Well, I guess then we get into the discussion of where the base of the battery is located at that point. But certainly there's nothing that would preclude an opening in the battery holder. There's certainly nothing in the claims that precludes an opening in the battery holder that would allow the spring even being at the base of the battery, between the base of the battery and the battery holder, that it should somehow partially stick out from the holder itself. It's getting kind of strange. What about the specification at column 6, lines 65 to 68, where it says when the contactor 44 is fully inserted into the battery holder 38, the ends of the spring butt up against the battery holder base 32. I recognize that's a preferred embodiment, but nonetheless a preferred embodiment is clearly... you wouldn't argue that it's not saying fully inside by that language, would you? In the preferred embodiment it absolutely is fully inside. There's no question about that. So the preferred embodiment is fully inside. What language would you cite to me to suggest it can be partially inside? Is there something in the specs somewhere that would expand inside to partially? Nothing specific, Your Honor. The second term at issue in this matter with respect to the claim construction from our perspective is the term bias. And I think we would urge the court to adopt the common meaning of the term biasing, which means the urge or biased movement of the battery. And there's nothing in there saying directly or indirectly, and we believe that the district court erred in construing this term as meaning exerting force in a particular direction towards the opened end of the battery. The phrase for biasing toward the opened end is a functional result associated with the spring, but does not limit biasing to direct or indirect forces associated with the spring. Claim 9 simply states that the spring caused the battery to be based toward, the bias towards the opening, which can result from either direct or indirect forces. And that's what we're saying occurred in this case. As long as it's urged in that direction, it doesn't matter if the spring's pushing it directly or if it's just, or it's the indirect force pushed back against the other side. The indirect force being in the exact opposite direction from the direction the spring is pushing. Absolutely. That's a good point. I remember in high school physics when they told us, when I pushed down on the table, they said, you know what, the table's pushing back on my head. But other than that example from high school physics, I've never seen the word biasing used in the sense that you're trying to use it here. I understand. Thank you. The third term. Do you think of any other common sense application of the term bias that would tend to make us think that when something is pushing in one direction, it's actually that thing is being biased in the opposite direction by virtue of Newton's law? Other than the common sense example of how this battery itself works, that when the spring is pushing one direction, it's being forced back into the spring by the opposite, basically the opposite end. The third issue with respect to the claims construction deals with the term extending outside the opening. We believe that the district court error in construing this term is meaning extending through and beyond the opening. The claim language does not support the requirement that the contact extend through and beyond. It just simply says... If you're putting your foot outside the car, doesn't it extend outside and beyond the car? It does, but it doesn't necessarily have to. I guess the point in this case is that if something is outside, it could, for example, if I was standing outside of this room, I would be outside the room even though I'm not extending out of the room. So if you went to the door and stuck your foot out, you'd be extending outside? I would be, but I would also be equally outside if I was simply standing outside the room as opposed to being in the process of going through the door. Counsel, so just a summary judgment of Nye and Frenchman. If we were to get hung up on any one of these three, does that just result in an affirmance or do we have to actually reach all three of them? Well, I think you don't have to reach all three because these issues also become important in the question of the doctrine of the equivalence. Many of the arguments raised by counsel for perimeter and indeed found by the district court all relate to... They claim that based upon the claims construction of the district court that our equivalence argument vitiate the terms of the claim. Well, why don't you have to win all three? Because if you win only one, the finding of non-infringement goes back to the actual limitation status. You have to win all three. Well, Your Honor, I don't think that's true. At least with respect to equivalence. Either literally or with respect to equivalence, right? Right, that's right. You can't lose both literal and equivalence with respect to any one of these. Or you're out. Well, no, I think we can't lose both literal and equivalence. As any element. That's right. I think I understood Judge Wood's question. Okay, well, I'm sorry I misunderstood the question. Briefly, with respect to our claims for the trade dress infringement. The... In this case, I think the problem with the district court and the argument made by perimeter in this matter with respect to the trade dress is that it fails to draw the distinction between the functionality of a coin slot. And I don't think we've ever argued that the existence of a coin slot as is reflected in the... preferred... in the claims is not functional. What we're claiming is the particular design of the battery pack sold by a visible fence which is not disclosed in the specifications is not functional and therefore can be the proper subject of a trade dress claim. Well, what we're talking about is not the existence of the coin slot itself but the two raised edges above the coin slot. And so we believe that those things are not functional but rather they're arbitrary because they're not necessary for the coin slot to function. Yes. No. No. I believe in this case, Your Honor, that there is an indention along with raised ridges along the side. But whether you call it indention or ridges or a combination of the two, that's really the only... You've got to do something, one or the other. Or possibly both. Well, only for a coin slot itself. But there are other... The coin slot itself is... You wouldn't disagree that the coin slot itself is functional. If I say I want to have a coin slot on my device you can't say, ah, I've already got one. That's correct. So then the question is, okay, you've claimed coin slots that fit your description. Have you, in effect, boxed me out of a large portion of the possible choices for coin slots, in effect, that try to monopolize a large area of functionality? That's what strikes me as the problem. Well, Your Honor, but the coin slot is not the only alternative as a manner in which to... I know, but if you... I think we agreed a moment ago that if I decided I wanted a coin slot you would say, fine, I can't object to that even though I have a coin slot, even though you do have a coin slot. So we already say it's okay for me to choose to have a coin slot. Then the question is, how limited am I in the choices I can make as to a coin slot? Because if you've got one design of a coin slot and somebody down the street has the other design of a coin slot, then I'm out of luck, according to your theory. That's my problem. Well, there is absolutely no evidence in the record of anybody else having a coin slot. Okay, but what's the problem with having something that occupies a large portion of the potential area of functionality, which is a couple of users, and you've used up all the functionality? Well, Your Honor, that may well be the case, but in this case, there was a choice. And they chose, intentionally or not, and we believe intentionally, to copy the design that we utilized for the coin slot. And that design, in and of itself, is not functional with respect to the use of the coin slot. I can see my time is up. Thank you, Your Honor.  Thank you, Your Honor. Mr. Harwell. Good afternoon again, Your Honors. I may just start with the trade dress issue, since we were just speaking about that. I did happen to bring along one of the products of the plaintiff. And indeed, to Your Honor, Judge Bryson's comment, they employed both of the two only types of coin slots that you could have for the indentation and the raised end. So in fact, by combining both of those in their alleged trade dress, if it were to be given trade dress significance, it would prevent a competitor from having either type of coin slot. But this case really falls squarely within the traffic's decision from the United States Supreme Court, because the patent in suit, the 900 patent, specifically has a claim, Claim 6, that recites the coin slot, or a groove in the base for turning the battery into the hole. And because of that, and because of the case law, the utility patent itself, and the fact that it falls within the scope of the claim, it doesn't have anything to do with whether the coin slot is an indentation or has raised edges. The language of Claim 6 is broad enough and actually is sort of generic in that sense. And I'm going to take page 78 of the appendix, where it says the battery pack of Claim 1, where in the base of the battery holder comprises an external slot for receiving a tool to facilitate insertion of the battery holder into the electronic receiver. And that is referring to the coin slot, as we've been calling it in this case. Now, in addition to that, evidence of the functional nature of the coin slot, the literature of Invisible Defense, which is found at 319 through 323 of the appendix, also talks repeatedly about the use of,  it shows this exact view of the device, and shows that it's to be inserted with a coin. Finally, insert a small, thin coin into the slot on the top of the battery. Continue turning the battery clockwise until the slot on the top of the battery is lined up. There's nothing that's not functional about this feature. So we believe that the district court properly grants summary judgment of no trade dress infringement because the aspect of the product overall that was alleged to have trade dress significance was a feature that is nothing but functional, and there's nothing that will save that here. Turning to the issue of the summary judgment of no infringement under the Doctrine of Equivalence, I believe that... So before we jump to that, would you mind talking with me about Judge Bryson's example? You're sitting in a car, or you're standing outside a car, putting your fingers inside. Well, you're not looking inside. But what about the flip side? You're sitting in the car with your fingers outside. Does that mean you're not looking inside? Well, you might be substantially inside the car and partially outside the car in your example. Yours is the one where you're inside, but you have your fingers to the outside. There's nothing in the claim. Lexicographers can choose to use words like partially, substantially, and less words of complete degree. Well, it also doesn't say located completely inside. It doesn't. In common parlance, it does seem to me that located inside, you can sit there, hold your arm out, and I can't imagine anyone is going to claim that you're not located inside the car at that point. So I'm hard-pressed to find how you want me to put the word completely in there. I agree with you, I should insert the word partially, but I can't insert the word completely either. Well, I think that it's important to bear in mind, and I do understand your point, it's important to bear in mind the context because we're talking about the spring being located inside, and it's in a specific position. The claim recites that the contactor has a spring that's inside the battery holder between the base of the battery and the battery. And so in that context, in not only the preferred embodiment, but the one and only embodiment in the 900 patent, there's no way that it could be anything but completely. There's no opening there. The opening is at the opposite end. And so it was based on the specification, which Your Honor read into the record a few moments ago, column 6, lines 65 to 68, when the contactor... And Mr. Bickfarmar didn't disagree with you, what you're saying at all, that the preferred embodiment demonstrates the spring completely inside. But we've got gavels and cases that say that the preferred embodiment doesn't define the scope of the claims. It doesn't limit the claims necessarily, right? I mean, unless there's a disclaimer somehow and the claim language itself would permit more, I'm not going to read a limitation from the preferred embodiment in. True. In this case, it's more than just a perverted embodiment. It's the only embodiment. So we're not trying to read a limitation into the claim from one of the multiple embodiments that suits our purpose. What we're doing is looking at the only embodiment in the patent to put in context the language of the claim, which, indeed, it's positioned and shown at patent figures 8 and 10 in particular as being completely inside. Compare and contrast that with the huge device where there's an opening and spring is located so that it's actually partially outside the opening. So that was the ultimate determination of the district court regarding no infringement because being partially outside the holder couldn't be the equivalent of being completely inside and not exposed. Now, with respect to the term biasing, I would suggest that the argument that pushing the battery in the opposite direction of the direction that the claim requires is equivalent is just not supported either by logic, common sense, or even physics, perhaps. In this situation, you've got the district court found that biasing is urging in a particular direction toward the opening of the battery holder. And it's quite clear, in fact, the claim itself says that the spring is for biasing the battery toward the opening of the battery holder. So you've got clear language, not just from the interpretation by the district court, but other language supporting that within the claim itself, which would be completely ignored if one were to determine that biasing of the battery could be done in the directions away from the opening. And in the device of the accused product, indeed, that's exactly what happens. The spring element is located within the opening and therefore biases the battery in the direction completely opposite of that. And we just see no basis for altering the district court's conclusion on the interpretation. And then once that interpretation is in place, certainly the reasoning that led to the finding of no equivalence is also supported because you've got a function, a specifically recited function in the claim that is now being ignored. And because of the all elements rule, you've got to find each and every element of the claim, either literally or by equivalence, and that would be one of the elements of the claim specifically recited that would not be present in the accused product. I believe you had asked whether if the court needed to address all three of the particular claim terms at issue. And I believe the answer to that was yes because each of the three specific claim terms in order to rule for your opponent. I'm sorry? In order to rule for your opponent. Right. I take your position as if we do what you want us to do, all we have to do is look at one. You could just look at one. I would suggest biasing because it's probably the easiest one to do that with. The other two, located inside and extending outside the opening, have similar issues with respect to your hypothetical. But biasing is very clear based on the specific language in the claim. And it's really, in addition to the interpretation given to the term biasing because of the other language of the claim that recites the function and the direction that biasing is occurring. In any event, I just urge the court that if it found something inappropriate about the district court's construction of one of the terms, that there's at least two other bases for which an affirmance could be had. Now, the third term at issue that Mr. Bernard raised is the term extending outside the opening. And this also is another term that relates to something that's happening with respect to the spring and its location. And in this case, the contacts of the spring are extending up and out through the opening, which is at the opposite end from the spring itself. And this can be seen specifically in figures 8 and 10 of the 900 pact. The district court found properly that extending outside the opening means extending through and beyond the opening. It's very clear that, again, it's not really importing a limitation. It's just the only version that's shown in this 900 pact has the contact arms extending through and outside the opening. I didn't really hear anything about what is incorrect about extending beyond the opening, because extending outside the opening and extending beyond the opening are really very, very synonymous. And it's just a matter of pretty much straightforward application of the plain language of the claims. And again, the accused device simply doesn't have that. It's got an opening at one end. It's got contact arms that extend out through a different portion of the battery holder. And therefore, based on the doctrines of equivalence, again, you've got a completely reversed situation. And the plain language would just have to be ignored to find that there was infringement under the doctrines of equivalence. You all had asked if all the claims instructions were modified and the case was sent back, would there then possibly be the case of literal infringement? And I believe, although we didn't address it in our briefs, that that would not be the case. It may have, to some extent, depended on what it is you would send back as the plain interpretations. I would like to just briefly point out to the court that you've graciously given me the opportunity to address the other two positions that we raised in that cross-appeal. But they're really alternative bases to find that there's no infringement. And these are the definitions that the court found for the phrase, a contactor having a spring and at least one contact. And then the other term is for the electrical connection. These are all phrases that are found in Claim 9. And we had urged at the district court that the court find that the contactor having a spring and at least one contact should be a conductive component having a pair of elongated contact arms that are interconnected by an elongated flexion spring. Indeed, that is a very verbal description of what's shown in the patent as the contactor of the springs. But this was specifically argued by the patentee to overcome the section 112 rejection that that's indeed what the configuration of the spring and contactors was. So it's our position that they have limited themselves in how that phrase is to be interpreted by their clear argument in the patent office to overcome an indefinite rejection. The other term that we raised is the phrase for electrical connection. And the court construed that to be any combination of contact arms and or a spring makes electrical connection with a terminal. And we had urged that the district court find that the spring and the contact arms make electrical connection to only one terminal of the battery. And in the accused device, that's not the case. The spring makes connection to one terminal and the contactors, which are separate from the flexion spring, make connection to the other terminal. So under construction, we have urged that it be no literal infringement. And we haven't addressed the issue of equivalence. But I guess that would be something to deal with, should this case be sent back. I'm not sure if you have any questions. I have about 30 seconds left, which I will give up. I don't remember penalized by giving up time. Mr. Barnard has two minutes. Thank you. Just briefly, I'd like to address what previously were the prosopial arguments that have just been referred to here by counsel. I guess the problem with the arguments with respect to these two portions of the claims construction is, I think, similar to the same problem with all of Perimeter's arguments, that they want to take the preferred embodiment that says, that's what the claims mean. That's what they have to mean. Here's the preferred embodiment. I mean, that's specifically what they do with respect to a contactor having the spring in at least one contact. They want to have, they say it should be an electronically conductive component having a pair of elongated contact arms that are interconnected by an elongated flexion spring. Well, where that comes from in Claim 9, I don't know. What they do is, they take the language from some of the specifications, and they take the language from Claim 20, where there's a specific reference to an elongated flexion spring and say, well, see, that must apply to Claim 9. Well, under the doctrine of claim differentiation, I believe it would be inappropriate to say that's a requirement of Claim 9, where Claim 20 depends on from Claim 9 and further defines the subject matter. With respect to the issue of the action from the Patent Office, that action from the Patent Office was limited to respect to Claims 4 and 20 of the 900 patent and was not addressing Claim 9, which is an issue in this case. So that simply is of no relevance. With respect to the other issue for electrical connection, once again, they seem to want to take terms from someplace that I don't know where they come from. They don't come from Claim 9 or anything relating to Claim 9 and urges it to mean the spring and the elongated contacts arms make the electrical connection to only one terminal of the battery. Well, I don't think for electrical connection necessarily assumes those things. And therefore, we believe that the claims construction of those two terms by the District Court is correct. Thank you. Thank you, Mr. Thodd. We understand the case. The case will be taken into the public. Thank you. All rise.